1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BERNARD CAIN, *et al.*,

       Plaintiffs,

    v.

TRANS UNION LLC, *et al.*,

       Defendants.

Case No.  C04-1779L

ORDER GRANTING IN PART AND
DENYING IN PART TRANS
UNION, LLC'S MOTION FOR
SUMMARY JUDGMENT

     This matter comes before the Court on a motion for summary judgment filed by defendant Trans Union LLC ("Trans Union").  (Dkt. #63).  Plaintiffs Bernard and Mary Cain argue that Trans Union, one of the major consumer reporting agencies, prepared an inaccurate credit report regarding Mr. Cain that led to their inability to purchase a home, emotional distress, and other damages.  For the reasons set forth below, the Court grants in part and denies in part Trans Union's motion for summary judgment.

## I.  FACTS

**A.**    **Background Facts.**

     The following facts are either undisputed or, where a dispute exists, it is resolved

ORDER REGARDING TRANS UNION'S
MOTION FOR SUMMARY JUDGMENT- 1

1   in plaintiffs' favor.  In May 2004, plaintiffs decided to make an offer to purchase the

2   house they were renting.  During the process of obtaining financing, they learned that Mr.

3   Cain's credit report reflected an unpaid Comcast bill.  Mr. Cain reviewed the reference on

4   his credit report, and noticed that the unpaid bill was for Bernard Kain, not Cain, and for

5   an address where he never lived.  On June 10, 2004, Mr. Cain informed Comcast and

6   Credit Protection Association ("CPA"), a furnisher of credit information, that the bill was

7   not his.  Mr. Cain sent CPA a letter from Puget Sound Energy verifying his address for

8   the relevant time period.  He called CPA one week later, on June 17, 2004, and learned

9   that the matter had been resolved.  CPA canceled the debt pursuant to Comcast's

10  instructions, and electronically sent a deletion transaction[1] to all three major consumer

11  reporting agencies.  Declaration of Carrie Medina ("Median Decl.") (Dkt. #36) at ¶ 9;

12  Reply Declaration of Carrie Medina (Dkt. #49) at ¶¶ 9-13.  When CPA submitted the

13  deletion transaction, they "requested that the information that [they] originally submitted

14  be deleted."  Declaration of Joseph Doerr ("Doerr Decl."), Ex. B, Medina Dep. at p. 29.

15  The deletion transaction included the data that CPA had received from Comcast,

16  including the name spelled Kain, the incorrect address, the CPA reference number, and

17  Mr. Cain's social security number.  Declaration of Andrew Kinstler ("Kinstler Decl.")

18  (Dkt. #71), Ex. 3 at pp. 28-29.

19       On June 17, 2004, Mr. Cain filed fraud reports with all three major credit reporting

20  agencies, including Trans Union.  CPA sent a letter, dated June 23, 2004, to Mr. Cain

21  _____

22       [1] A deletion transaction is "the means by which a collection is terminated and the
    information regarding the collection withdrawn from the credit reporting agencies."

23  Medina Decl. at ¶ 9.  The deletion transaction from CPA automatically triggers a deletion
    request of the debt to the national credit bureaus.  Medina Dep. at 20.  The deletion

24  request is included, for approximately six months, in the weekly information CPA
    electronically reports to the credit agencies.  Medina Dep. at pp. 40-41.

25

26  ORDER REGARDING TRANS UNION'S
    MOTION FOR SUMMARY JUDGMENT- 2

1  verifying that the Comcast account was changed to closed status due to a report of

2  potential fraud and explaining that CPA would instruct the consumer reporting agencies

3  to delete the account's information from their records.  Supplemental Declaration of

4  Andrew Kinstler (Dkt. #39), Ex. 1.  When plaintiff received the letter, he again called the

5  three credit reporting agencies "to report the fraud on [his] credit report."  Declaration of

6  Bernard Cain ("Cain Decl.") at ¶ 10.  By July 24, 2004, Equifax and Experian had

7  updated Mr. Cain's credit report to remove the disputed debt, but Trans Union had not.

8         Trans Union received a notice from a credit reporting agency on July 24, 2004 to

9  add a fraud alert to Mr. Cain's file.  Declaration of Liza Nicodemus ("Nicodemus Decl.")

10 at ¶ 6.  In response, Trans Union added a fraud alert to Mr. Cain's credit file and removed

11 his file from Trans Union's promotional mailing list for one year.  Id.

12        Mr. Cain called CPA again in mid-July to complain about the debt, and CPA sent

13 him a letter stating that "account number 8498320051391591-00, CPA Reference number

14 969139518 has been updated to a delete status in our database."  Cain Decl. at ¶ 11;

15 Supplemental Declaration of Andrew Kinstler (Dkt. #39), Ex. 1.  The letter further stated

16 that CPA had "updated your credit report with TransUnion, Equifax, and Experian as '. . .

17 please remove from all records and files.'  Please allow six to eight weeks for processing

18 at the credit reporting agencies."  Id.

19        By mid-July, plaintiffs and their landlord had agreed to $170,000 as the purchase

20 price for the house.  Their banker estimated that the error on Mr. Cain's credit report

21 would result in a 1% increase in their overall interest rate, resulting in additional

22 payments of $41,741.63 over the term of the mortgage.  Cain Decl., Ex. 5.

23        On August 5, 2004, Mr. Cain called Trans Union to complain that the debt was

24 still appearing on his credit report and interfering with his ability to secure a loan.  The

25

26 ORDER REGARDING TRANS UNION'S
   MOTION FOR SUMMARY JUDGMENT- 3

same day, Trans Union sent CPA an Automated Consumer Dispute Verification form ("A/CDV) to determine whether the debt was accurately reported. Nicodemus Decl. at ¶ 3. Trans Union deleted the Comcast debt from Mr. Cain's credit report on August 10, 2004 at CPA's request.

Plaintiffs signed the purchase and sale agreement on August 8, 2004. Their landlord, however, informed them around August 29, 2004 that she was not accepting their offer.

**B.      Trans Union's Procedures.**

Trans Union's subscribers, who include credit grantors and public records vendors, report credit information concerning individual consumers to Trans Union; the information summaries are called "tradelines." Declaration of William Stockdale ("Stockdale Decl.") at ¶ 4. When reporting credit information, subscribers include the consumer's identifying information associated with that particular tradeline. Id. Trans Union stores in its database the credit tradelines and public records information in connection with the consumer's identifying information. To identify individuals, Trans Union uses personal information, including social security number, name, address, date of birth, and employment information. Kinstler Decl., Ex. 1, Nicodemus Dep. at pp. 14-15.

Trans Union's Senior Director for Customer Information Services explains the procedure used with Mr. Cain's credit report as follows:

> CPA appears to have attempted to send account information to Trans Union to request the deletion of Credit Protection #969139518 ("CPA Account"). However, the consumer identification with this information identified Bernard Kain with an address that did not match the address of plaintiff Bernard Cain. Accordingly, under the matching logic Trans Union utilizes to assure accuracy and prevent fraud, the request to delete the CPA Account from Bernard Cain's [sic] Trans Union file was not posted to Bernard Cain's file.

ORDER REGARDING TRANS UNION'S
MOTION FOR SUMMARY JUDGMENT- 4

1  Stockdale Decl. at ¶ 2.

2      Plaintiffs filed their complaint in federal court on August 12, 2004 against Trans

3  Union and CPA.  The Court granted CPA's motion for summary judgment on August 8,

4  2005.

5      Plaintiffs assert claims against Trans Union under the Fair Credit Reporting Act

6  ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and under the Washington Fair Credit Reporting Act

7  ("WFCRA"), RCW 19.182.005 *et seq.*, for willfully and negligently failing to follow

8  reasonable procedures for assuring maximum possible accuracy of information in

9  investigative consumer reports.  Plaintiffs further allege that the violations of the FCRA

10  and WFCRA also constitute unfair or deceptive practices under the Washington

11  Consumer Protection Act, ("WCPA") RCW 19.182.010 *et seq.*

12                          **II.  DISCUSSION**

13  **A.     Summary Judgment Standard.**

14      On a motion for summary judgment, the Court must "view the evidence in the light

15  most favorable to the nonmoving party and determine whether there are any genuine

16  issues of material fact."  Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004).  All

17  reasonable inferences supported by the evidence are to be drawn in favor of the

18  nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir.

19  2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving

20  party, summary judgment must be denied."  T.W. Elec. Serv., Inc. v. Pacific Elec.

21  Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

22  **B.     Failure to Follow Reasonable Procedures.**

23      An entity violates both the FCRA and the WFCRA if it willfully or negligently

24  fails to "follow reasonable procedures to assure maximum possible accuracy of the

25

26

1   information concerning the individual about whom the report relates."  15 U.S.C.

2   §§ 1681e(b); <u>see also</u> RCW 19.182.060(2) (including identical statutory language).

3   Courts have evaluated reasonableness by analyzing what a reasonably prudent person

4   would do under the circumstances, and by weighing the burden of further action against

5   the potential harm of creating misleading information.  <u>See generally</u> <u>Swoager v. Credit</u>

6   <u>Bureau of Greater St. Petersburg</u>, 608 F. Supp. 972, 975 (M.D. Fla. 1985) (citing cases

7   from Fifth Circuit, D.C. Circuit, and district of Hawaii).

8         As an initial matter, Trans Union alleges that plaintiffs' FCRA and WFCRA

9   claims fail as a matter of law because plaintiffs cannot prove that Trans Union caused

10  them any damages.  <u>See</u> 15 U.S.C. § 1681o (providing for compensation for FCRA

11  violations in the form of actual damages and attorney's fees).  Plaintiffs allege damages

12  for, among other things, emotional distress and humiliation.  "The term 'actual damages'

13  has been interpreted to include recovery for emotional distress and humiliation."

14  <u>Guimond v. Trans Union Credit Info. Co.</u>, 45 F.3d 1329, 1333 (9th Cir. 1995) (internal

15  citations omitted) (noting that denial of credit is not a prerequisite to recovery under the

16  FCRA).  Trans Union does not dispute that plaintiffs suffered emotional distress or that it

17  was caused by their actions.  Therefore, plaintiffs have sufficiently alleged damages to

18  state a cause of action.

19        The Court next considers whether Trans Union failed to follow reasonable

20  procedures.  "In order to make out a prima facie violation under § 1681e(b), a consumer

21  must present evidence tending to show that a credit reporting agency prepared a report

22  containing inaccurate information."  <u>Guimond</u>, 45 F.3d at 1333 (internal citation

23  omitted).  Trans Union does not dispute that it prepared a credit report regarding Mr.

24  Cain that was inaccurate; the report included the Comcast bill as being his when it was

25

26  ORDER REGARDING TRANS UNION'S
    MOTION FOR SUMMARY JUDGMENT- 6

1   not.  The FCRA, however, does not impose strict liability.  A credit reporting agency

2   "can escape liability if it establishes that an inaccurate report was generated despite the

3   agency's following reasonable procedures."  Id. (noting that the reasonableness of the

4   procedures and whether the agency followed them "will be a jury question in the

5   overwhelming majority of cases").

6          Plaintiffs argue that under Guimond, once they have shown that Trans Union

7   prepared an inaccurate credit report, the burden shifts to Trans Union to show the

8   reasonableness of its procedures.  Trans Union counters that the burden does not shift;

9   instead, plaintiffs bear the burden of showing at least some evidence that the procedures

10  were unreasonable.[2]  Even if Trans Union's theory were accepted, summary judgment

11  would not be appropriate.  Plaintiffs have presented some evidence of unreasonableness

12  and a genuine issue of fact regarding reasonableness.

13         Plaintiff has shown that Trans Union received the instruction from CPA to delete

14  the Comcast debt, with the CPA reference number, from "all records and files," but it did

15  not do so until Mr. Cain called Trans Union himself to request the deletion.  Trans Union

16  argues that its procedures were nonetheless reasonable.

17         Trans Union notes that it only contracts with reputable providers.  However,

18  inaccuracies are inevitable, and the issue is whether Trans Union used reasonable

19

20         [2] See, e.g., Philbin v. Trans Union Corp., 101 F.3d 957, 965 (3rd Cir. 1996)
    (explaining two possible interpretations of the prima facie case language in Guimond: (1)
21  once plaintiff shows an inaccuracy, the burden shifts to defendant "to prove as an
    affirmative defense the presence of reasonable procedures," or (2) "plaintiff may present
22  his case to the jury on the issue of reasonable procedures merely by showing an
    inaccuracy in the consumer report and nothing more, but the burden does not shift to the
23  defendant.  Rather, a jury may, but need not, infer from the inaccuracy that the defendant
    failed to follow reasonable procedures."  The Philbin court found the second
24  interpretation of Guimond more "plausible."  Id.

25

26  ORDER REGARDING TRANS UNION'S
    MOTION FOR SUMMARY JUDGMENT- 7

1   procedures to assure maximum possible accuracy.  Trans Union also argues that CPA
2   sent the deletion request to Trans Union with inaccurate identifying information for Mr.
3   Cain, including the spelling Kain and the incorrect address.  However, CPA's deletion
4   request included the same information as its original report of the debt to Trans Union.
5   Medina Dep. at p. 29.  The fact that the information was sufficient to place the debt on
6   Mr. Cain's credit report, but was not sufficient to remove it, raises an issue of fact
7   regarding reasonableness.  Furthermore, CPA's deletion request included Mr. Cain's
8   social security number, and Trans Union has acknowledged that it uses social security
9   numbers to identify consumers.  CPA's deletion request also included the reference
10  number of the debt, and instructed the reporting agencies to delete the debt itself from "all
11  records and files," not just from Mr. Kain's file.  Despite the specificity of that request,
12  Trans Union's "matching logic" did not match the deletion request to Mr. Cain's file.
13  See, e.g., McKeown v. Sears Roebuck & Co., 335 F. Supp.2d 917, 931 (W.D. Wisc.
14  2004) (finding an issue of fact where defendant relied on procedures that did not detect
15  an inconsistency).  Also, there is no evidence that Trans Union attempted to follow up
16  regarding the contradictory information.

17      In light of these facts, a reasonable jury could conclude that Trans Union failed to
18  use reasonable procedures to assure maximum possible accuracy in its reports.

19  **C.    Failure to Reinvestigate.**

20      Plaintiffs also allege that Trans Union violated 15 U.S.C. § 1681i(a)(1)(A), which
21  states,

22      [I]f the completeness or accuracy of any item of information contained in a
        consumer's file at a consumer reporting agency is disputed by the consumer and
23      the consumer notifies the agency directly, or indirectly through a reseller, of such
        dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to
24      determine whether the disputed information is accurate and record the current
        status of the disputed information, or delete the item from the file in accordance
25

26  ORDER REGARDING TRANS UNION'S
    MOTION FOR SUMMARY JUDGMENT- 8

with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

The WFCRA contains the same requirement.  RCW 19.182.050.  Plaintiffs do not dispute that Trans Union complied with the statute when Mr. Cain notified it of the dispute on August 5, 2004.  Instead, they argue that he alerted Trans Union of the fraud on June 17 2004, but it failed to reinvestigate until August.

Plaintiffs' claim suffers from at least two infirmities.  First, he alleges in his declaration that he contacted the three credit reporting agencies on June 17, 2004, and references a handwritten note as evidence of that.  Cain Decl. ¶ 8, Ex. 1.  During his deposition, however, he could not recall the dates of his telephone calls to the credit reporting agencies or to whom his June 17, 2004 note referred.  Cain Dep. at p. 54.  In fact, he believed it could have referenced a call with Discover, who tracks his credit.  Id. Plaintiff cannot create an issue of fact by contradicting his sworn deposition testimony with a later self-serving declaration.  See, e.g., Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999).  This is especially true where, as here, the plaintiff has not explained the inconsistency.

Second, the reinvestigation requirement is triggered when a consumer notifies the agency of a dispute with "any item of information."  15 U.S.C. § 1681i(a)(1)(A).  Mr. Cain, however, does not state that he informed Trans Union of his dispute with the Comcast debt prior to August 5, 2004.  Instead, he makes a vague allegation that he "filed fraud reports" with the three credit reporting agencies.  Cain Decl. ¶¶ 8, 9, 10.  A fraud report triggers other, specific duties under the FCRA, including adding a fraud alert to the consumer's file, which Trans Union did.  Nicodemus Decl. at ¶ 6; 15 U.S.C. § 1681c-1. Nor have plaintiffs cited any authority stating that a general report of fraud is sufficient to trigger the reinvestigation requirements of § 1681i.  Finally, even if Trans Union received

ORDER REGARDING TRANS UNION'S
MOTION FOR SUMMARY JUDGMENT- 9

1    notice of the dispute from CPA, the duty to reinvestigate is triggered only by a report of a

2    dispute "by the consumer."  <u>See, e.g.</u>, <u>Whelan v. Trans Union Credit Reporting Agency</u>,

3    862 F. Supp.2d 824, 833 (E.D.N.Y. 1994) (quoting <u>Cahlin v. General Motors Acceptance</u>

4    <u>Corp.</u>, 936 F.2d 1151, 1160 (11th Cir. 1991)).  Accordingly, plaintiffs' allegations are

5    insufficient to establish a failure to reinvestigate claim.[3]

6    **D.    Washington Consumer Protection Act.**

7         Plaintiffs allege that Trans Union's violations of the FCRA and the WFCRA

8    constitute unfair or deceptive practices under the WCPA.  RCW 19.182.150 explicitly

9    makes a violation of the WFCRA a violation of the WCPA.  The WFCRA states, "A

10   violation of this chapter is an unfair or deceptive act in trade or commerce and an unfair

11   method of competition for the purpose of applying the consumer protection act, Chapter

12   19.86 RCW."  RCW 19.182.150.  Trans Union does not dispute the clear import of the

13   statute; rather, it argues that it did not violate the WFCRA.  Because there is a genuine

14   issue of material fact regarding whether Trans Union violated the WFCRA, there is also a

15   genuine issue of material fact regarding whether it violated the WCPA.

16   **E.    Damages.**

17        Plaintiffs allege that their damages include the difference in the purchase price of

18   the house they would have purchased and the appraisal price six months later.  Cain Dep.

19   at p. 80.  They argue that if "Trans Union had corrected [Mr. Cain's] credit report in a

20   timely fashion, as the other reporting agencies did, [plaintiffs] would have purchased the

21   ────────────────────

22        [3] Notably, if plaintiff had actually notified all three agencies on June 17, 2004 of
     his dispute with the Comcast bill, then all three would have had to have reinvestigated
23   and deleted the item by July 17, 2004.  Plaintiff does not allege that Experian and
     Equifax did so, and he has not sued them.  Instead, he notes that they acted reasonably by
24   removing the debt by July 24, 2004.  Plaintiffs' Opposition at p. 10 ("Equifax and
     Experian processed the transaction in a timely fashion").
25

26   ORDER REGARDING TRANS UNION'S
     MOTION FOR SUMMARY JUDGMENT- 10

1   home they were living in and [they] would have obtained the benefit of owning that

2   home." Cain Decl. at ¶ 15. The other two reporting agencies removed the inaccuracy by

3   July 24, 2004, but by that point, the seller's offer had already expired on July 20, 2004.

4   Plaintiffs made a counteroffer on the house on August 8, 2004, but they have offered no

5   evidence other than hearsay to show why their landlord rejected their offer on August 29,

6   2004. There is no evidence that the seller knew of their credit issues. Plaintiffs'

7   assertion that the sale did not occur because of Trans Union's delay in removing the debt

8   is too speculative to support this element of damages.

9         Plaintiffs also allege that Trans Union's violations of the FCRA were willful, so

10   they are entitled to punitive damages under the statute. Plaintiffs' Opposition at p. 14

11   (alleging that Trans Union "willfully and intentionally employed a system designed to

12   leave an erroneous debt on a consumer file after being instructed to delete the item").

13   The Ninth Circuit has recently explained that willfulness under the FCRA "entails a

14   'conscious disregard' of the law, which means 'either knowing that policy [or action] to

15   be in contravention of the rights possessed by consumers pursuant to the FCRA or in

16   reckless disregard of whether the policy [or action] contravened those rights." Reynolds

17   v. Hartford Fin. Servs. Group, Inc., 2006 U.S. App. LEXIS 1787 at *46 (9th Cir. Or. Jan.

18   25, 2006) (quoting Cushman v. Trans Union Corp., 115 F.3d 220, 227 (3rd Cir. 1997)).

19         As set forth above, a genuine issue of material fact remains regarding whether

20   Trans Union used a system designed to assure maximum accuracy and prevent fraud. A

21   jury could conclude that by adopting and utilizing that system, and by failing to follow up

22   on the deletion request from CPA, Trans Union knowingly or with reckless disregard

23   violated its statutory obligations. See, e.g., McKeown, 335 F. Supp.2d at 941 (denying

24   summary judgment regarding punitive damages; explaining that "a jury could conclude

25

26   ORDER REGARDING TRANS UNION'S
     MOTION FOR SUMMARY JUDGMENT- 11

1   that by adopting a system that ignored an express direction from a credit information

2   furnisher to change information that a consumer had disputed, defendant Trans Union

3   violated the act's reasonable procedure standard").

4   **F.    Ms. Cain's Standing.**

5          Trans Union argues that Ms. Cain lacks standing because she is not entitled to

6   recover damages separate from Mr. Cain's damages.  In response, plaintiffs note that

7   because Washington is a community property state, the injury was suffered by their

8   marital community.  An injury alone, however, is insufficient to confer standing.  Rather,

9   under the FCRA and the WFCRA, Ms. Cain must show that Trans Union prepared a

10  credit report regarding her that contained an inaccuracy.  She has not done so.  Because

11  plaintiffs' WCPA claim is based on the violations of the FCRA and the WFCRA, Ms.

12  Cain also lacks standing to pursue a WCPA claim.

13                          **III.  CONCLUSION**

14         For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART

15  Trans Union's motion for summary judgment (Dkt. #63).  Ms. Cain's claims are

16  dismissed.  Plaintiffs' claim under 15 U.S.C. § 1681i(a)(1)(A) is dismissed.  Trans

17  Union's motion is denied as to Mr. Cain's remaining claims under the FCRA, the

18  WFCRA, and the WCPA.

19

20         DATED this 9th day of February, 2006.

21

22

23                  *MWt S Lasnik*

24                  Robert S. Lasnik
                    United States District Judge
25

26  ORDER REGARDING TRANS UNION'S
    MOTION FOR SUMMARY JUDGMENT- 12